The next matter will be the first case from our list this morning, No. 152025 United States v. Johnny Sarmiento-Palacios. May it please the Court, my name is Julia Height and I represent New York. I'd like to apologize for my misdirection this morning as I was in the other court. I don't have directions. I'm from New York, and I apologize, especially to the prosecutor who, you know, had to wait to the bottom of the calendar for an otherwise case that was first on the calendar. So may it please the Court, in this case, in United States v. Morosco, this Court left the issue of the retroactivity of Amendment 794 for another day, and I suggest to this Court that this day has arrived. I would first want to focus very, very briefly on the facts of this case, since it is senseless to spin our wheels and discuss the retroactivity or even the constitutionality of the adjustment rule offense if it's going to be held that the facts don't warrant such relief, as has been done in other cases. Contrary to the government's argument, this is a perfect vehicle to apply and to determine the retroactivity of 794. We would suggest, even in and of itself, that the record suggests that appellant in this case did deserve the adjustment rule. At 47 years old, this was a man who has never before been convicted of a crime. He's never before been involved in any drug dealing whatsoever. He was nothing but a small pound pond in a huge, major conspiracy to transport cocaine in international waters. Appellant was enlisted as a mere crew member on this small boat. We have no clue as to what his actual function on that boat was. In fact, I would point out to this Court that the record establishes that this appellant is blind in one eye and has only 50 percent sight in the other eye, whether he was a cook, whether he was a janitor, whether he was just sat there for the amusement of the other two. We don't know. There's no proof at all that appellant had any inkling of the scope of the conspiracy, who was involved, whether he met any of the big players, whether he knew the source of the cocaine, where it was going, what it was actually worth on the boat. There's no proof that he owned the boat, that he got the boat, that he had anything to do with the boat being at a particular location other than getting on this particular boat. Now, both the government and the Court below believed that the fact that this Court doesn't have to consider the retroactivity of the amendment in this case because of this $10,000. But what is important here, it is clear that appellant's participation in this venture, and this is on the record, was not part of the  to promote drug trade, was not to say, okay, I'm going to be a member of this drug conspiracy, and maybe I'll get more money in the future. It was because he and his family were in a desperate financial situation in the strife-ridden country of Venezuela. There was no food, there's no medicine, there's no clothing, and that's reason, the only reason, out of desperation, to obtain this $10,000 for his family. Breyer. What about the new, the amendment, would lead you to think that the district court would come to a different conclusion? What's in it that you think would make a difference compared to what was in it before? Because I understand the argument that he should have gotten the role reduction even under the old amendment. That's fine. But for the retroactivity issue to matter, something in the new amendment has to matter. So what is it that you're identifying in that that would matter? There's a number of provisions in that thing, and I think that one is most important to this Court, and that is the universal dealer in drugs. They're no longer using that standard. It's compared to the actual participants in the boat. And how would that help your client? Because his role is not in comparison to some abstract player in the drug world, as this Court has interpreted this particular term. It is just in comparison to the role of his two co-defendants. Why wouldn't it be in comparison to the people in the conspiracy, as well? Well, because I think that we show that he had nothing whatsoever to do with the conspiracy. No, no, but in applying it, are you – I assume you're supposed to, even under the amended version, apply it in comparison to the actual conspiracy rather than to a hypothetical one. Yes. And I think very clearly he was way down in the whole conspiracy. The District Court didn't think that was enough. The District Court didn't. So it seems unlikely that the reason the District Court concluded that was because it was comparing him to some hypothetical other conspiracy. I think that that's one of the reasons, and I think also the other reason was a $10,000 reason, which – No, no. I thought it was unlikely that the District Court concluded that he didn't qualify as having a minimal role solely because it was comparing him to some hypothetical other conspiracy. Well, the court, the District Court, very frankly, gave very few facts, as did the pre-sentence report, as to what they were basing their determination on. I just think, just as a logical matter, it seems that what it was – if the amendment takes away the comparison to some hypothetical other conspiracy, I'm not seeing how that's likely to make a difference to the District Court on remand. Is there anything else in the amendment that would likely shape the District Court's analysis of the issue? Yes, Your Honor. It's the $10,000. That was the main argument of the prosecutor, and it was the main position of the court. You receive $10,000. That's an awful lot of money. You don't get a minor role. The amendment takes that away. It says no longer is the amount of money the main criteria for doing what could be deemed a menial task. We also have in the – Where does it say that in the amendment? I'm pretty sure I'll show you. Wait a minute. Wait, I'm sorry. I have it all down. The fifth factor is the degree to which the defendant stood to benefit from the criminal activity. And here the Court stated that the defendant received $10,000. But that just seems to say that it is a factor that can be considered. It can be considered, but it's the degree to which it can be considered. And the Court also stated, and I'm saying the degree here, $10,000, compared to the $10 million, $20 million that this venture was supposed to receive, is really peanuts in comparison to the overall conspiracy. And I think one of the major – other major points in contravention to the government's amendment also states that just because you're a transporter or a mule of these drugs doesn't mean you're not entitled to a major role or mitigating role in the crime. So I think that the application of the commentary would not be a frivolous act if this Court should rule it retroactive. And I would point out that it should be retroactive. And I think that on the equities and on the law, it should be in retroactive. I would point out that the two circuits, we know that the Ninth Circuit and the Eleventh Circuit have already held that it was retroactive. I would also point out that this is another important reason that this amendment should be held retroactive. We've set forth the reasons in our brief, and I would just like to very briefly state that if this Court does not determine that the amendment is retroactive, I think we have a very serious question here as to the constitutionality of the adjustment role. I think that the terms are inherently vague under the Johnson rationale. I mean, as if we're going to use the standard of the universal performer in a drug conspiracy, I think that's a vague role. I think if you look at the terms of the statute itself, a minimal role, a minor role, and something in between, whatever that means, I don't know. I think it's traditionally vague, and I think only the commentary which clarifies what the role is supposed to be makes sense. Otherwise, I think there's a serious question of the constitutionality. And I forgot to reserve two minutes for both. Thank you. Good morning, Your Honors. May it please the Court. Haywood State, John Matthews, on behalf of the United States. We submit that there are three reasons why the Court should affirm the district court's judgment in this case. First, the appellant failed to prove that he was substantially less culpable than the average participant in this offense. And as a result, he is not entitled to relief under either the guidelines applied during a sentencing hearing or the amended guidelines should the Court decide to apply retroactively. Second, Amendment 794 is not retroactive. This is because it makes substantive changes to the guidelines rather than merely clarifying the guidelines commentary in this case. Third, the appellant waived its argument regarding the constitutionality of the MDLEA. How did that happen? I thought he had raised it. Your Honor, the appellant initially raised the issue in the district court. However, subsequently, the appellant made an unconditional guilty plea, and as a result, he didn't preserve the argument for appeal. So specifically within the statute, part of the element is that the vessel was subject to the jurisdiction of the United States. That's a very good point. And I'd like to know at what point in this case does American law apply to this defendant specifically? Your Honor, American law applies. Excuse me. Let me just add something more. As I understand it, this was a Dutch vessel, right? Yes, Your Honor. The small boat they put over the side, was that part of the Dutch vessel? Your Honor, there was a Dutch vessel, and within the Dutch vessel, the United States Coast Guard had a – I know that, but that's not my question. I'm talking about the vessel they put over the side to put that crew on. That was also a Dutch vessel, yes. Okay, so he was taken from international waters onto Dutch territory. No, Your Honor. It was in international waters in the Central Caribbean. However, the boarding team was United States Coast Guard. I know about the boarding team. I'm not asking you about that. I'm talking about where he was transported into. He was transported from his vessel into a Dutch vessel. That's correct, Your Honor. Which was not only the main vessel, but also the rubber boat that was put over the side. That was a Dutch vessel also. Yes, Your Honor. So when does American law apply? American law applies because it was a stateless vessel that was occupied or at least investigated by a United States law enforcement team, United States Coast Guard, involving significant drug activity. So I want to go to the facts of this case. They see this boat. They see that it has no flag, no port. At that point, does American law apply? American law can apply. At that point, does American law apply? Yes, Your Honor. By just looking at a vessel and saying it doesn't have a flag, therefore the people on board are subject to U.S. No, Your Honor, not immediately. At that point, it applies when the United States has an agreement with another country to apply U.S. jurisdiction. Well, you have an agreement already, so just looking at the vessel and saying that it doesn't have a port or a flag, at that point American law applies? No, Your Honor, not just looking at the vessel. Looking at the vessel and discovering that there's 22 bales of cocaine on the vessel. You don't know that until you board it. Yes, Your Honor, but when they board, they ask questions. So is it when you board it that American law applies? After boarding and determining that there is drug trafficking involved, American law may apply. And, Your Honor, if Your Honors would reach the merits of the MDLA constitutionality argument, the appellants actually adopted Your Honor's dissent in, excuse me, Cardallus Luna. I'm aware of the cases. Yes. So they adopted the dissent, and specifically in that dissent, Your Honor made an exception for stateless vessels in terms of the jurisdiction argument. Returning to the first issue, specifically my sister counsel argued that the primary consideration by the United States was the payment of $10,000 in this case. And we submit that that's actually not correct. What was predominant in this case was the fact that the appellant, along with two other Dominican nationals,  How do these people, how do they know what American law is at that point? There's nothing on the record to determine what the participants know about American law at that point, Your Honor. Is there any due process issue with that? Your Honor, we submit that there is no due process issue, because, well, to clarify, knowledge of the law isn't necessarily a significant factor when the United States is applying, when it's applying its statutes. As to its citizens or people inside the country, yes. As to its citizens or citizens of other countries that are involved in violations of international law or Drug trafficking is not a violation of international law that I'm aware of. Your Honor, based on this Court's precedent and other circuits' precedent, I know this Court, it was by plain error, but many courts have determined that the MDLA is a valid exercise of United States jurisdiction based on the drug trafficking. You said that based on international law, can you point to any treaty that makes drug trafficking a violation? Your Honor, I can't at this time point to a specific treaty. However, because it was a violation of drug trafficking in addition to a stateless vessel, along with, you know, issues of piracy as well as slavery, you know, these are Piracy? Do you have piracy here? Well Than the boarding party? Because it's a stateless vessel, the policy as it relates to piracy is implicated because many courts have found that in international law, the stateless vessels don't have the same protections as vessels with a nationality. Because with a stateless vessel, you have individuals who have already made themselves, you know, comply with, like, based on the history, part of piracy was stateless vessels that were engaged in unlawful activity in the high seas. I want to talk to you about the retroactivity of the, so first, you said that the test, which I understand why you say that prior to the amendment, is the average participant. And I just want to understand how that actually, what the significance of that test versus not focusing on the average participant of drug conspiracies nationwide would be in a case like this. This is a very large drug conspiracy, right? There's no evidence on the record regarding the extent of the drug conspiracy. What we mainly have here is the vessel, the three occupants, and, you know, some arguments made as to who the supplier would have been and the value of the drugs overall, which is 10 to 20 million, which is very large. Very large. So if I were to compare this to the average conspiracy for drugs, this would be a large amount, not a small amount, right? Yes, Your Honor. So if I looked, if I compare them to, I just don't understand how it, what the significance of the nationwide comparison is supposed to be. So the significance of it. Does it help the defendant to look nationally in a case like this, or does it hurt the defendant? Your Honor, we submit that it doesn't help the defendant to look nationally in this case. It hurts the defendant? It hurts the defendant because, well, it hurts the defendant either way. But if you're comparing nationally, it hurts the defendant specifically because, for example, the appellant asserts that he was merely a water mule. So you're comparing this defendant as a water mule to other mules, and part of that fact-specific determination would be the amount of drugs that were involved, the level of supervision, for example, you know, airport mules. How would you even do the comparison? I don't quite get how you'd do the comparison. I mean, he's a water mule with $20 million. Yes, Your Honor. Does that make him more minimal or less minimal than a water mule with $500 in a $10,000 conspiracy? I just, I mean, how would you do that? Yeah, I think, well, we submit that the way you do that is to compare, yes, the amount of drugs involved in the case. But I'm saying the amount of drugs only seems relevant for a mule relative to the size of the conspiracy as a whole to figure out how important a mule he was. Well, it's also relevant in terms of, you know, the United States statutes and the fact, like, for example, you know, 500 grams. No, no, for purposes of determining whether he's a minimal participant or not. It just doesn't seem to make sense to say I have a lot of drugs in an enormous conspiracy, but now when I compare how important you are, I'm going to look at how many drugs a carrier in a very small conspiracy would have. That doesn't make a lot of sense to do it that way, does it? Understood, Your Honor. We submit that if it is a large conspiracy, that the mule in that case would actually be more culpable than a mule with a, you know, a comparatively, maybe percentage-wise amount of drugs. But are you saying that it's possible, though, that under the rule that we had, it might be that a water mule with a lot of drugs in a very large conspiracy would be compared to a mule in a small conspiracy with less drugs and therefore be thought to be more important? That could have been. Because that seems like a good reason to think that it would be important to remand if it's retroactive. No, Your Honor. Well, and one major reason why you wouldn't remand in this case is actually the probation office stated that this defendant was less culpable than other participants in the case, in this case. Yeah. So that being on the record, both parties were at will to respond. No, no, but what you just said is that if I compared him nationally, the right way to do the comparison might make him look more important because I'd be comparing him to couriers in smaller conspiracies. Well, perhaps, Your Honor, but — But if that's possible, then if it's retroactive and we're not supposed to look at those anymore, that would be important for the district court to know, right? Well, not in this case because there's no evidence that the district court was actually making — There's no evidence one way or the other. We don't know why exactly the district court did it, right? Well, we submit that there is evidence, including the probation officer's addendum, which says he was — But we don't know whether the — the district court should have, on your view, compared him to nationwide conspiracies, right? No, no. The district court should have compared him to participants in the case as well as perhaps — Perhaps. I thought under our case law you're supposed to do that analysis. That's what you're trying to say must be the continued rule. Your Honor, but there's evidence in this case that he compared to the participants in this case. So there wouldn't — there wouldn't be any error in this particular case is what we're alleging. And based on the — Is it clear enough on the record that the — that he looked only at this case and determined that he wasn't — No, Your Honor, but there is evidence that, as stated, the probation officer mentioned that he was less culpable than the participants in this case. The parties submitted extensive argumentation, and the district court found, and this would — close proximity with two other participants with 628 kilograms of cocaine would be sufficient to deny. We submit that that would not be clear error under either standard, Your Honor.  Thank you, Your Honor. No, thank you.